## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| | § | Civil Action No. 4:19-cv-2994 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DOES 1-5, individually and together | § | |
| d/b/a Easybox IPTV, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF DISH NETWORK L.L.C.'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND ISSUANCE OF LETTERS OF REQUEST

Plaintiff DISH Network L.L.C. ("DISH") respectfully files this memorandum in support of its motion for leave to conduct limited expedited discovery and for the issuance of letters of request for the purpose of identifying Defendant Does 1-5 ("Defendants").

### I.      Factual Background

DISH brings this copyright infringement action to stop Defendants from taking broadcasts of television channels exclusively licensed to DISH ("Protected Channels") and unlawfully retransmitting these channels over the Internet throughout the United States on Defendants' service (the "Easybox Service").  Defendants are transmitting the Protected Channels to customers who purchase Defendants' Easybox set-top boxes, smart IPTV subscriptions, and subscription renewals.  Defendants use numerous third parties to promote, manage, and operate the Easybox Service and sell Easybox set-top boxes, smart IPTV subscriptions, and subscription renewals, including service providers PayPal, Google, YouTube, Facebook, Instagram, Twitter, Enom, Namecheap, Xpert Fulfillment, Netrouting, Global Layer, WorldStream, OVH Hosting, and retailers BuyArabicTV.com and IPTV4Arab.com.  As demonstrated below, Defendants' true

names and street addresses are unknown and, therefore, subpoenas and letters of request to these third parties are necessary to uncover Defendants' true identities.

## A.  DISH's Television Service and Copyrighted Works.

DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide with satellite delivery under the "DISH" brand and through over-the-top ("OTT") services under the "Sling TV" brand whereby programming is delivered using a public Internet infrastructure.  (Hammer Decl. ¶ 3.)  DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.  (*Id.*)

DISH entered into signed, written agreements for the 25 Arabic, Hindi, and Urdu language channels identified as the Protected Channels in the complaint.  (*Id.* ¶ 5; Dkt. 1, Compl. ¶ 9.)  DISH was granted the exclusive license and right to distribute and publicly perform in the United States all programming aired on the Protected Channels, by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet.  (Hammer Decl. ¶ 5.)  DISH's exclusive rights as to the Protected Channels are currently in effect.  (*Id.*)

## B.  Defendants Infringe DISH's Exclusive Rights in the Programs on the Protected Channels.

Defendants unlawfully transmit the programs that air on the Protected Channels in the United States over the Internet to users of the Easybox Service.  (Duval Decl. ¶¶ 12-13.) Defendants capture live broadcast signals of the Protected Channels, transcode these signals into a format useful for streaming over the Internet, transfer the transcoded content to computer servers that are controlled and maintained by Defendants and hosted by Global Layer B.V. ("Global Layer") and WorldStream B.V. ("WorldStream") of the Netherlands; OVH Hosting, Inc. ("OVH") of Canada; and Netrouting Inc. ("Netrouting") of the United States.  (*Id.* ¶ 14; Dkt. 1 ¶ 16.)  The

2

Protected Channels were observed repeatedly during monitoring of the Easybox Service.  (Duval Decl. ¶ 13, Ex. 4.)

Defendants promote and sell Easybox set-top boxes, smart IPTV subscriptions, and subscription renewals at their *www.easybox.tv* ("Easybox.tv") website or through retailers in the United States including *www.buyarabictv.com* ("BuyArabicTV.com") and *www.iptv4arab.com* ("IPTV4Arab.com").  (Duval Decl. ¶¶ 4, 11.)  Defendants use PayPal, Inc. with numerous Google email addresses to receive payments for sales made through Easybox.tv.  (*Id.* ¶ 4; Ferguson Decl. ¶ 2, Ex. 1.)  Defendants used an order fulfillment company called Xpert Fulfillment, Inc. to ship Easybox set-top boxes in the United States.  (Duval Decl. ¶ 5, Ex. 1.)  Defendants' service providers for Easybox.tv include Enom, Inc. as its domain name registrar and Namecheap, Inc. as its web hosting provider.  (*Id.* ¶ 6, Ex. 2.)  Defendants also promote the Easybox Service through Facebook, Twitter, Instagram, and YouTube.  (*Id.* ¶¶ 7-10.)

The foregoing service providers and retailers are expected to have information that identifies the Defendants—those responsible for operating the Easybox Service; unlawfully transmitting the Protected Channels; and promoting and selling Easybox set-top boxes, smart IPTV subscriptions, and subscriptions renewals, and therefore are the intended recipients of DISH's subpoenas and letters of request.  (*Id.* ¶¶ 15-16; Ferguson Decl. ¶¶ 4-6, Exs. 3-15.).)

## II.    Argument and Authorities

**A.    Good Cause Exists to Grant DISH Leave to Conduct Expedited Discovery.**

**1.    Legal Standard**

Discovery may be conducted prior to the Rule 26(f) conference when authorized by court order.  Fed. R. Civ. P. 26(d)(1).  District courts in the Fifth Circuit apply a "good cause" standard to determine whether to allow expedited discovery.  *See, e.g.*, *St. Louis Grp., Inc. v. Metals &*

*Additives Corp.*, 275 F.R.D. 236, 239-40 (S.D. Tex. 2011) (citing cases); *Turner Indus. Grp., Inc. v. Int'l Union of Operating Eng'rs, Local 450*, No. H-13-0456, 2013 WL 2147515, at *3 (S.D. Tex. May 10, 2013). "Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Turner*, 2013 WL 2147515, at *3 (quoting *St. Louis Group*).

When evaluating requests for expedited discovery to identify anonymous Internet users, courts consider the following: "(1) whether the plaintiff makes a prima facie showing of harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the necessity of the subpoenaed information to advance the claim; and (5) the user's expectation of privacy." *Id.; Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified By Hash: B7FEC872874DoCC9B1372ECE5ED07AD7420A3BBB*, No. 4:12-cv-00963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012); *Indigital Solutions, LLC v. Mohammad*, No. H-12-2428, 2012 WL 5825824, at *2 (S.D. Tex. Nov. 15, 2012); *Combat Zone Corp. v. Does 1-13*, No. 3:12-CV-3927-B, 2013 WL 230382, at *4 (N.D. Tex. Jan. 22, 2013). Consideration of the foregoing factors demonstrates that there is good cause to grant DISH's request for expedited discovery.

### 2. DISH States a Prima Facie Claim of Actionable Harm Against Defendants.

DISH asserts claims against Defendants under the Copyright Act. (Dkt. 1 ¶¶ 4, 24-31.) A claim for copyright infringement has two essential elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). DISH pleads a prima facie claim under the Copyright Act by alleging that it owns valid copyrights in the works that aired on the Protected Channels and that Defendants infringed DISH's copyrights in those works. (Dkt. 1 ¶¶ 1, 3, 8-10, 16-19, 24-27.)

Defendants directly infringed DISH's exclusive distribution and public performance rights by transmitting the Protected Channels. (*Id.*)

### i.    DISH's Copyright Ownership and Protection.

DISH holds the exclusive right to distribute and publicly perform in the United States the works that air on the Protected Channels by means including satellite, OTT, IPTV, and Internet, pursuant to signed, written agreements. (Part I.A., *supra*.) As the exclusive licensee of the distribution and public performance rights, DISH has an ownership interest in these copyrights and is entitled to sue for Defendants' infringement. *See* 17 U.S.C. § 501(b); *see also Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("Under current copyright law, exclusive licenses are recognized as a type of an ownership interest … Exclusive licensees may sue without joining the copyright owners") (citations omitted). DISH's copyright ownership is therefore adequately pled in the complaint. *See DISH Network L.L.C. v. TV Net Solutions, LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351, at *4-5 (M.D. Fla. Nov. 25, 2014) (granting default judgment and finding DISH's copyright ownership and standing was sufficiently shown based on programming agreements that conveyed exclusive distribution rights to DISH); *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (finding copyright ownership was sufficiently alleged where complaint stated that the plaintiff held the exclusive right to distribute television programs pursuant to written agreements entered into with channel providers).

A published work is protected under the Copyright Act provided: "(1) on the date of first publication, one or more of the authors … is a national, domiciliary, or sovereign authority of a treaty party … ; or (2) the work is first published … in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b). The works that air on the Protected Channels

5

were authored and first published in the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, or India. (Dkt. 1 ¶¶ 25-26.) These nations are a party to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under section 104(b). 17 U.S.C. § 101; United States Copyright Office, Circular 38(a), International Copyright Relations of the United States, *available at* *www.copyright.gov/circs/circ38a.pdf*. The works at issue thus satisfy the requirements of section 104(b) for protection under the Copyright Act.

DISH's copyrighted works need not be registered with the United States Copyright Office to be protected. Registration is only necessary for a "United States work." 17 U.S.C. § 411(a). A work first published in a treaty party is not a "United States work." *See id.* § 101 (defining the term as a work first published in the United States, simultaneously in the United Sates and another place, or in a foreign nation not a treaty party); *see also Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 790 (E.D. Va. 1998) (holding registration not required where complaint alleged the copyrighted work was a "Berne Convention work whose country of origin is not the United States").

However, seventy-four of DISH's copyrighted works are registered with the United States Copyright Office, which creates a presumption as to ownership and validity. (Dkt. 1 ¶ 10, Ex. 1); *see* 17 U.S.C. § 401(c); *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence of both that a copyright is valid and that the registrant owns the copyright."). The first element of DISH's copyright infringement claim is sufficiently pled.

### ii.    Defendants Infringed DISH's Copyrights in the Protected Channels.

The second element of DISH's claim for copyright infringement requires "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.*, 499 U.S. at 361.  The term "copying" means to violate one of the exclusive rights granted to copyright owners in 17 U.S.C. § 106, which include the right to reproduce, distribute, or publicly perform copyrighted material. *See CoStar Grp.*, *Inc. v. LoopNet, Inc.,* 373 F.3d 544, 549 (4th Cir. 2004); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Defendants capture live broadcast signals of the Protected Channels, transcode these signals into a format useful for streaming over the Internet, transfer the transcoded content to one or more servers provided, controlled, and maintained by Defendants, and then transmit the Protected Channels to users of the Easybox Service throughout the United States without authorization from DISH.  (Dkt. 1 ¶¶ 11, 16.)  These allegations establish that Defendants are directly infringing DISH's exclusive distribution and public performance right.  *See Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2506-11 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance).

DISH states a prima facie claim of direct copyright infringement in Count I of the complaint.  Accordingly, the first factor considered when ruling on a request for expedited discovery weighs in favor of granting DISH's motion.  *See, e.g., Well Go USA,* 2012 WL 4387420, at *2 (first factor satisfied based on allegations in complaint concerning copyright infringement and having IP address of the alleged infringer); *Indigital Solutions,* 2012 WL 5825824, at *2 (S.D. Tex. Nov. 15, 2012) (first factor met where complaint stated a claim for relief based on anonymous defendants' violation of the Computer Fraud and Abuse Act).

7

3.      **DISH's Subpoenas and Letters of Request are Narrowly Tailored to Identify Defendants.**

DISH requests permission to serve subpoenas and letters of request on the third-party service providers that Defendants use to operate the Easybox Service and promote, sell, and receive payments for Easybox set-top boxes, smart IPTV subscriptions, and subscription renewals. DISH's subpoenas and letters of request have been filed with the Court and are reasonably calculated and narrowly tailored to reveal Defendants' identities.  (Ferguson Decl. ¶¶ 4-5, Exs. 3-15.)

DISH's subpoenas and letters of request generally seek information to identify the name and contact information for all account holders of record and persons paying for and managing the accounts with the third-party service providers associated with the Easybox Service.   The discovery of similar information for the sole purpose of identifying anonymous defendants has been authorized on many occasions.  *See Combat Zone,* 2012 WL 230382, at *5 (finding proposed subpoenas for "'ISPs to produce any and all documents and/or information sufficient to identify the user or users' of the IP addresses" was sufficiently specific to satisfy the second factor); *DISH Network L.L.C. v. Does,* No. 4:17-cv-1618, Dkt. 6 (S.D. Tex. June 19, 2017); *Nagravision SA v. Does,* No. 4:14-mc-02883, Dkt. 5 (S.D. Tex. Dec. 12, 2014).

4.      **DISH's Subpoenas and Letters of Request are Necessary to Identify Defendants.**

The third and fourth factors examine whether there is an alternate means for obtaining information requested in the subpoenas and whether that information is necessary to advance the claims.  *Turner*, 2013 WL 2147515, at *3.  DISH conducted a thorough investigation and thus far is only able to identify Defendants' IP addresses with Global Layer, WorldStream, OVH, and Netrouting, Defendants' accounts with various third-party service providers, and Defendants

retailers. (Duval Decl. ¶¶ 4-11, 15-16.) DISH does not have a means for identifying Defendants other than its proposed subpoenas and letters of request. (*Id.* ¶ 16.) Without this information, DISH will be unable to advance this case and stop the unauthorized transmission of the Protected Channels. The third and fourth factors weigh in DISH's favor. *See, e.g., Combat Zone*, 2013 WL 230382, at *5 (finding third and fourth factors satisfied because subpoena to ISP was necessary to identify unknown infringer and case could not proceed until defendant was identified and served); *Well Go USA*, 2012 WL 4387420, at *2 (reaching same conclusion).

     **5.**     **DISH's Subpoenas and Letters of Request Will Not Violate Defendants' Expectation of Privacy.**

The final factor considers the effect the discovery might have on Defendants' expectation of privacy. *Turner*, 2013 WL 2147515, at *3. Defendants are directly infringing DISH's exclusive distribution and public performance right by transmitting the Protected Channels on the Easybox Service. *See supra,* Part I.B. Defendants cannot rely on a First Amendment right of privacy to prevent DISH from discovering their copyright infringement. *See West Coast Prods., Inc. v. Does 1-351*, No. 4:12-cv-00504, 2012 WL 2577551, at *4 (S.D. Tex. July 3, 2012) (denying Doe defendant's attempt to prevent ISP from disclosing his identity on the basis of privacy and free speech rights, reasoning that if "anonymity is used to mask copyright infringement or to facilitate such infringement by others, the First Amendment is no protection"); *see also Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979) ("The first amendment is not a license to trammel on legally recognized rights in intellectual property.").

**B.**     **The Court Should Issue Letters of Request to Global Layer, WorldStream, and OVH.**

Defendants use Global Layer and WorldStream, both located in the Netherlands, and OVH located in Canada, to transmit the Protected Channels to users of the Easybox Service. *See supra,* Part I.B. DISH seeks discovery from Global Layer, WorldStream, and OVH through letters of

request under The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555 ("Hague Convention") because each is located abroad and has documents that are essential to DISH's claims and within the proper scope of discovery under the Federal Rules of Civil Procedure.

Rule 28(b) of the Federal Rules of Civil Procedure provides that discovery may be taken in a foreign country by, among other means, a proceeding under "an applicable treaty or convention." Fed. R. Civ. P. 28(b); *see also* 28 U.S.C. § 1781(b)(2) (allowing the "transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner"). The United States, Canada, and the Netherlands are all signatories to the Hague Convention. *See Straub v. A P Green, Inc.*, 38 F.3d 448, 452 (9th Cir. 1994) (observing Canada became signatory to the Hague Convention in 1989); *Rosen v. Netsaits*, 294 F.R.D. 524, 528 (C.D. Cal. 2013) ("The Netherlands is a signatory to the Hague Convention"). Under Article 1 of the Hague Convention, "[i]n civil or commercial matters a judicial authority of a Contracting State may . . . request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." 23 U.S.T., Art. 1. These "procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Société Nationale Industrielle Aéropostiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 541 (1987).

Courts have inherent authority and discretion to issue letters of request to foreign tribunals. *See Triumph Aerostructures, LLC v. Comau, Inc.*, No. 3:14-cv-2329-L, 2015 WL 5502625, at *2 (N.D. Tex. Sept. 18, 2015) (citing *United States v. El-Mezain*, 664 F.3d 467, 516-17 (5th Cir. 2011)). When deciding whether to exercise its discretion, a court must determine whether the use

of letters of request will facilitate discovery.  *El-Mezain*, 664 F.3d at 518.  DISH's proposed letters of request to Global Layer, WorldStream, and OVH satisfy this standard.

Defendants transmit the Protected Channels without authorization.  (Dkt. 1 ¶¶ 1, 11, 16.) To accomplish this, Defendants capture, transcode, and transfer the Protected Channels to servers hosted by Global Layer, WorldStream, and OVH, among others.  (*Id.* ¶ 16; Duval Decl. ¶¶ 13-14.)

DISH's proposed letters of request, which are attached to the Ferguson declaration as Exhibits 13-15, are narrowly tailored to obtain seven categories for the persons assigned the IPs that streamed the Protected Channels: (i) name and contact information; (ii) products and services used; (iii) servers used; (iv) documents submitted to create or change each account; (v) account statements; (vi) payment records; and (vii) communications.  This information is "essential for the meaningful, merit-based resolution of this case."  *Brey Corp. v. LQ Management, L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *3 (D. Md. July 26, 2012).  Global Layer, WorldStream, and OVH should be able to identify and confirm Defendants' roles in transmitting the Protected Channels on the Easybox Service.  Accordingly, the Court should grant DISH's motion and issue the attached letters of request.  *See Republic of Kazakhstan v. Does 1-100*, No. 1:15-cv-01900-ER-HBP, Dkts. 21, 60 (S.D.N.Y. Oct. 28, 2015) (issuing letter of request to New Zealand third party to obtain contact information, email addresses, and payment information used by anonymous defendants to post confidential material belonging to plaintiff) (attached to Ferguson Decl. ¶ 3, Ex. 2); *DISH Network L.L.C.,* No. 4:17-cv-1618, Dkt. 6 (issuing similar letters of request).

### III.   <u>Conclusion</u>

For the foregoing reasons, DISH respectfully requests that the Court grant this Motion, authorize DISH to conduct limited expedited discovery, issue the letters of request attached to the

Ferguson declaration as Exhibits 13-15, and return them to DISH for transmittal to the appropriate and competent judicial authorities.

Dated:  August 12, 2019

Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By:_ /s/ Stephen M. Ferguson

Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

**Counsel for Plaintiff DISH Network L.L.C.**