UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | |
| | § | Civil Action No. 4:19-cv-2994 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HUNG TRAN and THI NGA NGUYEN, | § | |
| d/b/a Easybox IPTV, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**Memorandum of Points and Authorities in Support of Plaintiff DISH Network L.L.C .'s Motion for Default Judgment Against Hung Tran and Thi Nga Nguyen**

## Table of Contents

I.  Summary ............................................................................................................1

II.  Argument and Authorities ................................................................................2

    A.  Legal Standard ..........................................................................................2

    B.  The Court has Jurisdiction to Grant Default Judgment. .........................2

    C.  Default Judgment on Count I, Direct Copyright Infringement. ............3

        1.  DISH Owns Valid Copyrights. ..............................................3

        2.  Defendants Infringed DISH's Copyrights. ...........................7

    D.  Statutory Damages Should be Awarded for Copyright Infringement. ..................8

        1.  Defendants are Engaged in Massive Copyright Infringement. .................8

        2.  Statutory Damages at $150,000 Per Registered Work. ...........................9

    E.  DISH Should be Awarded Permanent Injunctive Relief. ....................14

        1.  DISH's Irreparable Harm and Money Damages are Inadequate. ...........14

        2.  The Balance of Equities and Public Interest Favor an Injunction. ..........16

        3.  The Court Should Order Third Party Service Providers to Cease Providing Services Supporting Defendants' infringement. .....................................17

        4.  The Court Should Order Registries and Registrars to Disable and Transfer to DISH the Domains Supporting Defendants' Infringement. ................18

III.  Conclusion ......................................................................................................19

In accordance with Federal Rule of Civil Procedure 55(b)(2), DISH Network L.L.C. ("DISH") moves the Court to grant default judgment against Hung Tran ("Tran") and Thi Nga Nguyen ("Nguyen," collectively, "Defendants").

## I.      Summary

Defendants' Easybox service perpetrates and facilitates copyright infringement on a massive scale through the unauthorized copying, distribution and public performance of international television channels and programs in the United States. Defendants' wrongful acts infringe DISH's exclusive rights to distribute and publicly perform the programming that airs on these protected channels.

Defendants established a broadcasting network that, without authorization, continuously captures and transmits the protected channels over the Internet to users of Defendants' Easybox set-top boxes, smart IPTV subscriptions, and subscription renewals in the United States. As such, Defendants are liable for direct copyright infringement.

Defendants engaged in these illegal activities since at least January 2016, despite having received at least 112 notices of infringement informing them of the infringing nature of their conduct and demanding that they remove the protected channels from the Easybox service. Defendants have not ceased the infringements. Even after being sued in this case, Defendants continue to transmit DISH's copyrighted works without authorization.

Despite proper service, Defendants failed to respond to DISH's first-amended complaint or otherwise defend. Default judgment is now appropriate. DISH requests statutory damages for 66 registered, copyrighted works, which represents a small fraction of Defendants' overall

infringement, and a permanent injunction to prevent further infringement of DISH's copyrights and further irreparable harm to DISH.

## II.      Argument and Authorities

### A.      Legal Standard

Default judgment is properly entered if the well-pleaded factual allegations in the complaint, taken as true, establish Defendants' liability. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Damages may be awarded without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### B.      The Court has Jurisdiction to Grant Default Judgment.

Defendants defaulted by failing to respond to or defend this action despite being properly served. (Dkts. 18-19 (affidavits of service).) Defendants were served with summons, DISH's First Amended Complaint, DISH's Application for Clerk's Entry of Default, and this motion, among other documents. (*Id.*; Declaration of Stephen M. Ferguson [Ferguson Decl.] ¶ 5; Dkt. 21-4; Certificate of Service.)  Defendants are Vietnam residents and not minors, incompetent, or exempt under the Servicemembers' Civil Relief Act.  Fed. R. Civ. P. 55(b)(2); (*See* Dkt. 12, First Amended Complaint ("FAC") ¶¶ 1, 3, 12-31 (Resident of Vietnam and copyright infringement); Dkts. 18-19 (served in Vinh, Vietnam); Dkt. 21-1 ¶¶ 5-7, Exs. 2-3 (must be at least 18 years old to have a PayPal account).)

The Court has subject matter jurisdiction, and personal jurisdiction and venue are both proper. (FAC ¶¶ 3-6; Dkts. 18-19.) Defendants operate a television rebroadcasting enterprise of international scope that makes DISH's copyrighted works available to customers in the United States. (FAC ¶¶ 8-10, 12-15, 18-21). Defendants obtained accounts with United States based

2

payment processer PayPal, contracted with a warehousing and logistics service provider and retailers in the United States, and used a United States bank account. (*See* Ferguson Decl. ¶¶ 6-9, Exs. 4-7; Duval Decl. ¶¶ 4-6.)

## C.     Default Judgment on Count I, Direct Copyright Infringement.

A claim for copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

### 1.     DISH Owns Valid Copyrights.

DISH is the fourth largest pay-television provider in the United States, delivering copyrighted programming to millions of subscribers nationwide via Satellite under the "DISH" brand and over-the-top services under the "Sling" brand. (FAC ¶ 7.) Through its satellite and Sling services, DISH is one of the largest providers of international television channels in the United States. (*Id*.) DISH contracts for and licenses rights for the international channels it distributes from channel owners and their agents including Al Jazeera Media Network; ARY Digital USA LLC; B4U U.S.; GEO USA LLC; Hum Network Limited; MBC FZ LLC; MSM Asia Limited; International Media Distribution (Luxembourg) S.A.R.L.; World Span Media Consulting, Inc.; and Dream Media (collectively, the "Networks) (*Id*. ¶ 8.)

Networks provide channels that include Al Arabiya, Al Hayah 1, Al Jazeera Arabic News, Al Jazeera Mubasher, ART Cima, ARY Digital, B4U Music, CBC, CBC Drama, Dream 2, Future TV, Geo News, Geo TV, Hekayat, Hum TV, Hum World, LBC, LDC, MBC1, MBC Drama, MBC Kids (a/k/a MBC3), MBC Masr, Melody Classic, SAB, and SET Max (collectively, the "Protected Channels"). (*Id*. ¶ 9.) Many of the works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the United States

copyright office.[1] (*Id.* ¶ 10, Ex. 1; Ferguson Decl. ¶¶ 10-15, Exs. 11-16.) DISH also holds exclusive distribution and public performance rights for a vast number of additional, unregistered copyrighted works that aired on the Protected Channels. (FAC ¶ 10, Ex. 2.)

DISH holds the exclusive right to distribute and publicly perform in the United States the works that air on the Protected Channels pursuant to written licensing agreements with Networks. (*Id.* ¶ 10.) The written agreements are sufficient to transfer the specified exclusive rights to DISH. *See* 17 U.S.C. §§ 201(d), 204(a) (authorizing transfer of rights protected under the Copyright Act by signed, written agreement). As the exclusive licensee of the distribution and public performance rights, DISH may sue for Defendants' infringement of those rights. 17 U.S.C. § 501(b); *Mapp v. UMG Recordings, Inc.*, 208 F. Supp. 3d 776, 791 (M.D. La. 2016) ("Accordingly an exclusive licensee may sue others for infringement…."), *vacated in part on other grounds*, No. 15-602-JWD-RLB, 2017 WL 3675419 (M.D. La. May 3, 2017); *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("Under current copyright law, exclusive licenses are recognized as a type of an ownership interest …. Exclusive licensees may sue without joining the copyright owners").

The foregoing well-pleaded allegations from DISH's FAC, taken as true, satisfy the requirement of copyright ownership. (*See* FAC ¶¶ 8-10; Ferguson Decl. ¶¶ 10-15, Exs. 11-16); *see* 17 U.S.C. § 410(c) (stating that a certificate of registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," including ownership); *DISH Network L.L.C. v. Dima Furniture Inc.*, No. TDC-17-3817, 2019 WL 2498224, at *3 (D. Md. June 17, 2019) ("Accepting the allegations in DISH's First Amended Complaint as true, DISH has established that it held the exclusive right to distribute and publicly perform the works on the Protected

---

[1] Defendants transmitted DISH's registered and unregistered copyrighted works on the Easybox service.  (FAC ¶¶ 7, 27; Duval Decl. ¶¶ 8, 12, Ex. 1.)

Channels….”), *report and recommendation adopted*, 2019 WL 5588901 (D. Md. July 12, 2019); *DISH Network L.L.C. v. Mo' Ayad Al Zayed Trading Est.*, No. 4:17-cv-03909, Dkt. 24 at 1-2 (S.D. Tex. Aug. 24, 2018) (granting default judgment and finding that DISH owns copyrights in works that air on substantially the same channels as those at issue in this case); *DISH Network L.L.C. v. Shava IPTV Network LLC*, No. 1:15-cv-00706 (TSE/IDD), Dkt. 120 at 9 (E.D. Va. Sept. 15, 2016) (plaintiffs presumed to have valid copyrights because copyrights registered with U.S.C.O.); *DISH Network L.L.C. v. TV Net Solutions, LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351, at *4-5 (M.D. Fla. Nov. 25, 2014) (granting default judgment finding copyright ownership was sufficiently alleged where complaint stated the plaintiff held the exclusive right to distribute television programs pursuant to written agreements entered into with channel providers). (Ferguson Decl. ¶¶ 17-18, Exs. 19-20) (attaching orders from *Mo'Ayad* and *Shava*).

A published work is protected provided: "(1) on the date of first publication, one or more of the authors … is a national, domiciliary, or sovereign authority of a treaty party … ; or (2) the work is first published … in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b).

DISH claims protection for works that aired on the Protected Channels and were authored or first published in the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, and India. (FAC ¶ 26.) These nations are party to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a "treaty party" under section 104(b). 17 U.S.C. § 101; U.S.C.O., Circular 38(a), *available at www.copyright.gov/circs/circ38a.pdf*. The works at issue therefore satisfy the requirements of section 104(b) for protection under the Copyright Act.

5

DISH's copyrighted works need not be registered with the United States Copyright Office to be protected. Registration is only necessary for a "United States work." 17 U.S.C. § 411(a); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *5 (C.D. Cal. Nov. 21, 2019) ("The registration requirement applies only to "United States work[s]."). A work first published in a treaty party is not a "United States work." *See* 17 U.S.C. § 101 (defining the term as a work first published in the United States, simultaneously in the United Sates and another place, or in a foreign nation not a treaty party). DISH alleges that its copyrighted programs are not United States works because they were authored or first published in the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, and India which are treaty parties under the Copyright Act. (FAC ¶ 26.) Thus, neither DISH nor Networks are required to register their works. 17 U.S.C. § 411(a).

However, as discussed in Part II.D.1, 66 of DISH's copyrighted works are registered with the United States Copyright Office, which creates a presumption as to ownership and validity. *See* 17 U.S.C. § 410(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence of both that a copyright is valid and that the registrant owns the copyright."); *Shava*, Dkt. 120 at 9 (applying § 410(c) presumption to registered Hindi language programs). "[O]wnership of a valid copyright" is established by default. *Feist*, 499 U.S. at 361. DISH is the exclusive licensee pursuant to written agreements with Networks, and therefore DISH holds the copyrights in the registered works. (FAC ¶ 10); *see Glovaroma, Inc. v. Maljack Prods., Inc.,* 71 F. Supp. 2d 846, 854 (N.D. Ill. 1999) (plaintiffs/assignee created a rebuttable presumption that a third party copyright claimant was the owner of the copyright via the registration certificate and the defendant failed to introduce any factual evidence to counter the registration certificate); *Smith v. Casey,* 741 F.3d 1236, 1241 (11th

Cir. 2014) (explaining that § 501(b) provides standing to both the legal and beneficial owner of a copyright interest and authorizing one to rely on a copyright registration issued to the other).

> ### 2.    Defendants Infringed DISH's Copyrights.

Copyright infringement requires "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. Copying means to violate an exclusive right granted to copyright owners in 17 U.S.C. § 106, including to distribute or publicly perform. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787-88, n.57-58 (5th Cir. 1999).

Defendants own and operate the Easybox service. (FAC ¶¶ 3, 12.) Defendants retransmit the Protected Channels through the Easybox service. (*Id.* ¶ 16.) In particular, Defendants capture live broadcast signals of the Protected Channels, transcode these signals into a format useful for streaming over the Internet, and transfer the transcoded content to one or more servers provided, controlled, and maintained by Defendants. (*Id.*) The Protected Channels are then transmitted to Defendants' customers in the United States via the Easybox service. (*Id.* ¶¶ 16-17.) As a result, Defendants directly infringe DISH's exclusive rights to distribute and publicly perform the works airing on the Protected Channels through the Easybox service. (*Id.* ¶¶ 25-29.)

These well-pleaded allegations in DISH's complaint establish that Defendants infringed DISH's copyrights in works airing on the Protected Channels, thus satisfying the second element of DISH's copyright infringement claim. *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 441-51 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance); *Dima Furniture*, 2019 WL 2498224, at *4 (same); *Mo'Ayad*, Dkt. 24 at 1-2 (same); *Shava*, Dkt. 120 at 9 (same); *China Central Television v. Create New Tech. (HK) Ltd.*, No. CV15-01869 MMM, 2015 WL 3649187, at *8 (C.D. Cal. June 11, 2015) (same); *DISH Network L.L.C. v. Lool Tech Co., Ltd.*, No. 4:16-cv-

01771, Dkt. 25 at 1 (S.D. Tex. Mar. 17, 2017) (same); (Ferguson Decl. ¶¶ 17-19, Exs. 19-20, 24) (attaching orders from *Mo'Ayad*, *Shava*, *and Loot Tech*).

Default judgment should be granted on Count I for direct copyright infringement. *See TV Net*, 2014 WL 6685351, at *4 (granting default judgment and finding copyright infringement based on allegations that defendants transmitted copyrighted programs via similar services); *Dima Furniture*, 2019 WL 2498224, at *4 (same); *Shava*, Dkts. 120 at 9, 124 (same); *Loot Tech*, Dkt. 25 at 1 (same); (Ferguson Decl. ¶¶ 18-19, Exs. 20-21, 24) (attaching orders from *Shava and Loot Tech*).

**D.      Statutory Damages Should be Awarded for Copyright Infringement.**

The Copyright Act allows for recovery of the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages. *See* 17 U.S.C. § 504(a). DISH elects statutory damages and moves the Court to award damages for their 66 registered, copyrighted works, as requested in the FAC.

**1.      Defendants are Engaged in Massive Copyright Infringement.**

Defendants are infringing DISH's copyrights on a massive scale by retransmitting the Protected Channels without authorization on the Easybox service. Monitoring by an enforcement expert establishes that Defendants have continually transmitted the Protected Channels since at least January 2016. (Duval Decl. ¶¶ 7-8, 12, Ex. 1.) Monitoring detected 937 instances of Defendants retransmitting the Protected Channels. (*Id.*) The number of individual works aired on the Protected Channels is more substantial.

Most of the copyrighted works aired on the Protected Channels are unregistered non-United States works, for which DISH's monetary remedy is limited to actual damages and the disgorgement of a defendant's profits. *See* 17 U.S.C. §§ 412, 504. The actual damages that DISH

8

sustained are difficult to quantify for the reasons stated in Part II.E.1 discussing permanent injunctive relief, and Defendants' refusal to participate in this case has prevented DISH from obtaining evidence of their profits. Consequently, the damages request is limited to registered works, which allow for recovery of statutory damages.

DISH owns copyrights in at least 66 works registered with the United States Copyright Office (the "Registered Works"). (FAC ¶ 10, Ex. 1; Ferguson Decl. ¶¶ 10-15, Exs. 11-16.) Each of these 66 works was registered within three months of its first publication. (*See* Ferguson Decl. ¶¶ 10-15, Exs. 11-16.) As a result, the registrations were timely for purposes of awarding statutory damages. *See* 17 U.S.C. § 412(2) ("[N]o award of statutory damages . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").

The Registered Works are individual episodes of television series that aired on the Protected Channels. (FAC ¶ 10, Ex.1; Ferguson Decl. ¶¶ 10-15, Exs. 11-16.) Defendants are deemed to have infringed the copyrights in the Registered Works by virtue of their default. *See Nishimatsu,* 515 F.2d at 1206; (FAC ¶ 27). In addition, the monitoring results evidence that Defendants transmitted the Registered Works on their Easybox service. (*See* Duval Decl. ¶¶ 8, 12, Ex. 1 (showing Defendants distributed the Protected Channels on the dates of publication, or on the dates of monitoring before and after the dates of publication.) DISH requests statutory damages for each of the 66 Registered Works.

### 2.     Statutory Damages at $150,000 Per Registered Work.

Statutory damages up to $150,000 per work may be awarded for willful infringement. 17 U.S.C. § 504(c). Courts may consider the following factors in determining whether to award

maximum statutory damages: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Tapestry, Inc. v. Trendy Tex., LLC*, No. H-16-3150, 2018 WL 1558274, at *1 (S.D. Tex. Jan. 19, 2018). Statutory damages of $150,000 for each of the 66 Registered Works, for a combined total of $9,900,000, are appropriate in this case.

Defendants willfully infringed DISH's copyrights. (FAC ¶¶ 22-23, 30.) An infringement is willful if the defendant "knows his actions constitute an infringement." *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 236 (5th Cir. 1998). "Willfulness may be inferred if notice of a valid copyright was given prior to infringement." *Malaco Inc. v. Cooper,* No. 300CV2648P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) (citing *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir. 1991)). Defendants had actual knowledge of their infringement. Between January 2016 and November 2019, Defendants were provided with 112 notices demanding that they cease transmitting the Protected Channels. (FAC ¶ 22; Ferguson Decl. ¶¶ 2, 4, 8, Exs. 1, 3, 8.) Additional notices were sent to service providers associated with the Easybox service between February 2016 and November 2019. (FAC ¶ 23; Ferguson Decl. ¶ 3, Ex. 2.) Defendants transmitted the Protected Channels from different locations when the service providers removed the Protected Channels from the Easybox service. (*Id.*)

Defendants were again notified of the infringement when the FAC was served on them. (Dkts. 18-19.) Defendants transmitted the Protected Channels without authorization after receiving the notices of infringement and after being served with the FAC. (Duval Decl. ¶¶ 7-8, Ex. 1.) Recent monitoring from January 2020 shows that Defendants continue to transmit some of the Protected Channels. (*Id.*)

Defendants indisputably had actual knowledge that their conduct constituted copyright infringement, and when summoned to account for their actions, failed to answer and defaulted. Defendants are therefore willful copyright infringers subject to maximum statutory damages. *See US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *5 (N.D. Tex. June 17, 2016) (applying statutory damages factors under the Copyright Act and concluding that "[b]ecause Defendant's conduct was willful and he admitted that he acted knowingly and intentionally by virtue of his default, an award of statutory damages against Defendant in the maximum amount is warranted"), *report and recommendation adopted*, No. 3:14-cv-01541-M-BH, Dkt. 60 (July 11, 2016); *Superior Form Builders Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (upholding award of maximum statutory damages where plaintiff failed to establish any actual damages).

Additional factors such as "the defendant's profits[,]" "a plaintiff's lost revenues[,]" "the potential for discouraging a defendant from engaging in similar behavior going forward[,]" and "whether a defendant has cooperated in providing records from which to assess the value of the infringing material" also support an award of statutory damages of up to $150,000 per work. *US Green Bldg.*, 2016 WL 3752964, at *5. Defendants' Easybox service distributes the Protected Channels on a 24 hour per day, 7 day per week basis, and has done so since at least January 2016. (Duval Decl. ¶¶ 8, 12, Ex. 1.) Defendants likely would not have continued offering the Easybox service if it were not highly profitable. Considering Defendants do not pay licensing fees for the Protected Channels and instead engage in copyright infringement, it may be inferred that the Easybox service generates substantial profits. The exact amount of profits that Defendants received and number of persons using the Easybox service is not available because Defendants chose to default rather than defend this action, thereby frustrating attempts at obtain discovery from them.

11

Defendants' infringement caused DISH to suffer lost subscription revenues, lost market share, and price erosion, which are inherently difficult to calculate. *See* Part II.E.1. It would cost a consumer approximately $150 per month to subscribe to DISH and receive all the Protected Channels that are licensed and available on DISH's satellite service. (Declaration of Michael Schwimmer [Schwimmer Decl.] ¶ 7, Ex. 1.)  During the four years of Defendants' infringement, DISH has lost many thousands of subscribers to its Arabic, Hindi, and Urdu programming packages, at least in part to Defendants' unauthorized transmission of the Protected Channels.  (*Id.* ¶ 8, Ex. 2.)  And limited third party discovery establishes Defendants' sale of at least 619 Easybox set-top boxes in the United States.[2]  (Ferguson Decl. ¶¶ 6-7, 9, Exs. 5, 7, 10.)  Each sale of an Easybox set-top box, smart IPTV subscription, or subscription renewal is potentially depriving DISH of substantial revenues. Defendants' unauthorized transmission of the Registered Works contributes to DISH's loss because the Registered Works air on the Protected Channels. (FAC ¶¶ 10, 27, Ex. 1; Ferguson Decl. ¶¶ 10-15, Exs. 11-16.)  DISH's large loss of subscribers during the four year period of Defendants' infringement and the monthly subscription cost to receive all the Protected Channels from DISH supports a maximum statutory damage award of $9,900,000.[3]

Defendants should not be rewarded for their failure to defend this case, which is effectively precluding DISH from calculating actual damages and profits. *See US Green Bldg.*, 2016 WL 3752964, at *5; *see also Teri Woods Publ'g, L.L.C. v. Williams*, No. 12-4854, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013) (awarding maximum statutory damages against copyright

---

[2] Defendants' failure to participate in this case has prevented DISH from discovering the total number of Easybox set-top boxes sold in the United States.

[3] Maximum statutory damages are supported with only 1,375 Easybox users during the four years of Defendants' infringement.  (48 months multiplied by $150 per month multiplied by 1,375 Easybox users equals $9,900,000.)

infringers, without "evidence of Defendants' profits, Defendants' costs avoided or Plaintiffs' lost profits," where defendants failed to answer complaint or participate in any way); *Hydentra HLP Int. Ltd. v. Porn69.org*, No. CV-00451-PHX-DGC, 2016 WL 3213208, at *2 (D. Ariz. June 10, 2016) (awarding maximum statutory damages of $150,000 per work for 84 works for a total of $12,600,000 where defendant posted plaintiff's copyrighted videos on the internet and then failed to answer after being sued).

Defendants' clear willfulness and the strong need for deterrence, as shown by ongoing infringement in the face of numerous notices of infringement and intent to operate their business on the basis of stealing others' intellectual property, justifies an award of $150,000 per work. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (statutory damages of $31.68 million were not excessive in case of willful copyright infringement, as shown by the defendant continuing to broadcast programming after the case was filed); *China Central*, Dkt. 158 (granting default judgment and awarding $30 million in statutory damages for copyright infringement); *Mo'Ayad*, Dkt. 24 at 1 (awarding maximum statutory damages for each of eight registered works); *Dima Furniture Inc.*, 2019 WL 2498224, at *3 (same); *Shava*, Dkts. 120 at 12, 124 (awarding $150,000 for each of 171 registered works totaling $25,650,000 for operating similar services); *Lool Tech*, Dkt. 25 at 1 (awarding $150,000 for each of 7 registered works totaling $1,050,000 for operating similar service); (Ferguson Decl. ¶¶ 16-19, Exs. 17, 19-21, 24) (attaching orders from *China Central*, *Mo'Ayad*, *Shava*, and *Lool Tech*).  DISH should be awarded statutory damages of $9,900,000, which is $150,000 for each of the 66 Registered Works.

**E.     DISH Should be Awarded Permanent Injunctive Relief.**

The Copyright Act authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A permanent injunction is appropriate where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each requirement for a permanent injunction is satisfied here.

**1.     DISH's Irreparable Harm and Money Damages are Inadequate.**

Reputational injury and lost profits, which are difficult to calculate, each constitute irreparable harm. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation); *Fl. Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) ("A substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate.").

DISH contracted with Networks granting DISH the exclusive right to transmit the Protected Channels to subscribers in the United States. (FAC ¶ 10; Schwimmer Decl. ¶ 3.) DISH offers the Protected Channels to its subscribers for a fee. (FAC ¶ 7; Schwimmer Decl. ¶ 7.) DISH loses revenues and market share when users receive the Protected Channels through Defendants' unauthorized Easybox service, which is provided at a lower cost compared to purchasing the channels from DISH. (FAC ¶ 31; Schwimmer Decl. ¶¶ 6-8, 10.) Quantifying DISH's lost revenues is impractical as the number of customers that would have selected or otherwise stayed with DISH

14

cannot be easily determined. (Schwimmer Decl. ¶¶ 8, 10.) Defendants' copyright infringement, if allowed to continue, will lead to accumulating losses that are increasingly difficult to calculate.

DISH is irreparably harmed by subscriber loss and reduction in market share resulting from Defendants' Easybox service. *See Dima Furniture*, 2019 WL 249822, at *7 (finding that DISH was irreparably harmed by defendant's infringing streaming service); *Shava*, Dkt. 120 at 13 (finding irreparable harm and monetary damages are inadequate because defendants are liable for copyright infringement and plaintiffs have alleged the difficulty of determining the extent of the harm from the infringements); *China Central*, 2015 WL 3649187, at *13 ("Defendants' conduct has caused irreparable harm because it has materially reduced the number of individuals who subscribe to authorized U.S. platforms for [plaintiffs'] programming, causing lost market share."); *Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (enjoining unlawful streaming service and finding "the loss of revenue to Plaintiffs and their licensees, which is already significant, will continue to increase, and constitutes irreparable injury"); (Ferguson Decl. ¶ 18, Ex. 20) (attaching order from *Shava*).

Second, Defendants' unauthorized transmission of the Protected Channels irreparably harms DISH by damaging its business reputation and goodwill. Defendants' Easybox service is not subject to DISH's quality assurance and security protocols and are plagued by interruption or downtime and poor picture quality, which harms DISH in the eyes of consumers that mistakenly believe the Protected Channels on the Easybox service originate from or are approved by DISH or Networks, or incorrectly assume this is the same level of quality received from a legitimate service such as that provided by DISH. (Schwimmer Decl. ¶¶ 11-12; Duval Decl. ¶ 13.) *See China Central*, 2015 WL 3649187, at *13 ("[D]efendant's infringing conduct has caused irreparable harm because it impairs plaintiffs' brand, reputation, and goodwill by associating their programming with poor

quality transmissions and viewing experiences on [defendants'] device."); *WTV*, 824 F. Supp. 2d at 1012-14 (finding irreparable harm for reasons that include sub-optimal viewing experience and risk of customer confusion associated with defendant's unauthorized video streaming service).

Finally, Defendants may not be financially able to compensate DISH for the damages caused to date or losses incurred in the future, and therefore Defendants' infringement causes irreparable harm to DISH for which monetary damages alone are not an adequate remedy. *See Aspen Tech., Inc. v. M3 Tech, Inc.*, 569 Fed. App'x 259, 273 n.56 (5th Cir. 2014) (upholding permanent injunction and concluding irreparable harm is established where it is probable that plaintiff will be unable to collect any judgment against defendant); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (finding irreparable harm under similar circumstances).

### 2. The Balance of Equities and Public Interest Favor an Injunction.

DISH will be irreparably harmed without an injunction. An injunction would only require that Defendants forego illegal conduct, which is not entitled to any weight in an equitable balancing of factors. *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 n.12 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration."); *Apple Computer*, *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (holding injunction may issue despite potentially "devastating effect" on defendant's business because an infringer is not "permitted to construct its business around its infringement").

Permanently enjoining Defendants will advance the public interest by protecting the copyrighted works airing on the Protected Channels, maintaining the incentive for Networks to produce these works and for DISH to license them. *See Shava*, Dkt. 120 at 13 ("[I]t is in the public

16

interest to uphold the exclusive rights of the copyright owner."); *China Central*, 2015 WL 3649187, at *14 (Any "interest the public may have 'in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works'") (quoting *Grokster*, 518 F. Supp. 2d at 1222); (Ferguson Decl. ¶ 18, Ex. 20) (attaching order from *Shava*).

      **3.**    **The Court Should Order Third Party Service Providers to Cease Providing Services Supporting Defendants' infringement.**

Defendants have repeatedly used third-party service providers including Global Layer B.V., OVH Hosting, Inc., WorldStream B.V., and Netrouting Inc. to transmit the Protected Channels.[4] (Duval Decl. ¶ 9, Exs. 2-5.) Disabling the computer servers will assist in at least temporarily preventing Defendants from distributing the Protected Channels. (Duval Decl. ¶¶ 10, 14.)

Courts have enjoined third parties who received actual notice of a permanent injunction from providing services in connection with copyright infringement. *See Dima Furniture*, 2019 WL 2498224 at *8 (enjoining nonparty internet service providers because of their "active concert or participation" with defendant's infringing conduct); *Mo'Ayad*, Dkt. 24 at 4 (ordering that accounts with nonparty internet service providers be terminated where they were being used to operate the infringing service); *China Central*, Dkt. 192 at ¶¶ 16-17 (ordering third party service providers to cease providing web, server, file hosting, data center and colocation, primary and backup storage, back-end, traffic routing, bandwidth, content delivery networks, domain name server systems, search-based online advertising, domain name registration privacy protection, social media, user

---

[4] The computer servers that are continuing to transmit the Protected Channels as of January 2020 are identified by IP addresses 134.19.180.26; 134.19.180.30; 134.19.191.194; and 213.152.173.38. (Duval Decl. ¶ 10.)  The service provider responsible for these IP addresses – Global Layer B.V. – has been provided with copies of DISH's motion and the proposed injunction and thereby given an opportunity to object.  (*See* Certificate of Service.)

generated and online content, and data security services); *Lool Tech*, Dkt. 25 at ¶ 3 (ordering third

party service providers to cease providing electronic storage, computer server, website hosting,

file hosting, domain hosting, domain name registration, content delivery or acceleration, or social

media services); *Times Content Limited v. Doe*, No. 4:17-cv-01287, Dkt. 10 at ¶ 2 (S.D. Tex. May

5, 2017) (ordering third party service providers to suspend all services to infringing websites);

*Showtime Networks Inc. v. Doe*, No. 2:15-cv-03147-GW-MRW, Dkt. 20 at ¶ 2 (C.D. Cal. Apr. 30,

2015) (same); *Warner Bros. Entm't, Inc. v. Doe*, No. 14-cv-3492, Dkt. 27 at 6-7 (S.D.N.Y. Oct. 3,

2014) (same); *Shava*, Dkts. 136 at 6, 138 at 2 (enjoining third party service providers and the

affiliated computer servers from providing services to the defendants that support their infringing

activity); (Ferguson Decl. ¶¶ 16-22, Exs. 18-19, 22-27) (attaching orders from *China Central*,

*Mo'Ayad*, *Lool Tech*, *Times Content Limited*, *Showtime*, *Warner Bros.*, and *Shava*); *see also Arista

Records, LLC v. Tkach*, No. 15-cv-3701(AJN), 122 F. Supp. 3d 32, 36-38 (S.D.N.Y. 2015)

(holding non-party service providers must comply with injunction, finding "courts that have

addressed comparable technological services have similarly held that they fall within an

injunction's reach if those services are knowingly used to facilitate injunction violations") (citing

cases).

### 4. The Court Should Order Registries and Registrars to Disable and Transfer to DISH the Domains Supporting Defendants' Infringement.

Defendants used the domain name *easybox.tv* to advertise, promote, and distribute Easybox

set-top boxes, smart IPTV subscriptions, and subscription renewals. (FAC ¶¶ 3, 13-15, 17, 18, 20-

21; Duval Decl. ¶ 4.) Defendants are using domain names *e900x.com* and *k2442.com* (together

with *Easybox.tv*, the "Offending Domain Names"), to operate the Easybox service and distribute

the Protected Channels. (Duval Decl. ¶ 11, Ex. 6.) VeriSign, Inc. is the registry for each of the

Offending Domain Names. (*Id.*) Transferring the Offending Domain Names to DISH would stop Defendants, at least temporarily, from being able to distribute the Protected Channels in violation of DISH's rights.[5]  (*Id.* ¶¶ 11, 14.)

Similar orders in copyright and trademark cases instructed registries and registrars to disable and transfer infringing domains to the plaintiffs.  *See Dima Furniture*, 2019 WL 2498224 at *8-9; *Mo'Ayad*, Dkt. 24 at 4; *China Central*, Dkt. 192 at ¶ 18; *Lool Tech*, Dkt. 25 at  ¶ 4; *Times Content Limited*, Dkt. 10 at ¶ 3; *Warner Bros.,* Dkt. 27 at 7; *Shava*, Dkts. 136 at 6, 138 at 2; (Ferguson Decl. ¶¶ 16-20, 22, Exs. 18-19, 22-25, 27) (attaching orders from *China Central*, *Mo'Ayad*, *Lool Tech*, *Times Content Limited*, *Warner Bros.*, and *Shava*).

A proposed permanent injunction has been filed similar to the injunctions entered in analogous cases. *See, e.g., Mo'Ayad*, Dkt. 24 at 4; *China Central*, Dkt. 192; *Lool Tech*, Dkt. 25; (Ferguson Decl. ¶¶ 16-17, 19, Exs. 18-19, 24) (attaching orders from *Mo'Ayad*, *China Central*, and *Lool Tech*).

### III.    Conclusion

The Court should grant DISH's motion and hold Defendants jointly and severally liable for damages in the amount of $9,900,000 and enter a permanent injunction, which is necessary to protect DISH's copyrights from further infringement.

---

[5] VeriSign has been provided with copies of DISH's motion and proposed injunction and thereby given an opportunity to object.  (*See* Certificate of Service.)

Dated:  January 30, 2020

Respectfully submitted,

Hagan Noll & Boyle LLC

By: _/s/ Stephen M. Ferguson_
Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

Counsel for Plaintiff DISH Network L.L.C.