UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § § § | Civil Action No. 4:19-cv-2994 |
| Plaintiff, | § § | |
| v. | § § § | |
| HUNG TRAN and THI NGA NGUYEN, d/b/a Easybox IPTV, | § § § | |
| Defendants. | § § § | |

**Declaration of Michael Schwimmer**

I, Michael Schwimmer, of Englewood, Colorado, declare as follows:

1. I am Executive Vice President of International Programming, Business Development and Strategy at DISH Network L.L.C. ("DISH"). I am over eighteen years of age and am competent to make this declaration. In my current role I oversee international programming, marketing, and business strategy for the company's multicultural offerings. I hold a B.A. in Economics and Spanish from the University of California, Santa Barbara and a J.D. from the University of San Francisco School of Law. I was admitted to the State Bar of California in June 1987 and practiced law for several years after admission. I make this declaration based on personal knowledge, the books and records of DISH, and information reported to me in the ordinary course of business by individuals with a business duty to accurately report that information.

2. DISH is the fourth largest pay-television provider in the United States, serving approximately 12 million subscribers nationwide with satellite delivery under the "DISH" brand and through over-the-top ("OTT") services under the "Sling" brand whereby programming is delivered using a public Internet infrastructure. Through its satellite and Sling services, DISH is

one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

3. DISH entered into signed, written agreements for the 25 Arabic, Hindi, and Urdu language channels identified as the "Protected Channels" in the First Amended Complaint. DISH was granted the exclusive license and right to distribute and publicly perform in the United States all programming aired on the Protected Channels, by means including satellite, IPTV, and OTT. DISH's exclusive rights as to the Protected Channels are currently in effect.

4. From reviewing the findings of Nagra, including the declaration of Gregory Duval, I am informed and believe that Defendants routinely transmitted the Protected Channels to users of their Easybox service within the United States. Nagra observed the Protected Channels being transmitted on the Easybox service during time periods in which DISH held the exclusive right to distribute and publicly perform the works that aired on the Protected Channels in the United States.

5. The Protected Channels include some of the most popular Arabic, Hindi, and Urdu language channels offered by DISH, such as MBC1, Al Arabiya, MBC Masr, Al Jazeera Arabic News, LDC, ARY Digital, Hum TV, SAB, and SET Max. The foregoing is based on my years of experience with the Arabic, Hindi, and Urdu language TV business in the United States and my knowledge of the popularity of these channels among DISH's subscribers. Having these popular channels is critical for purposes of attracting and retaining customers for any Arabic, Hindi, and Urdu language television service, including the Easybox service.

6. Defendants were not authorized by DISH to transmit the Protected Channels or the works comprising the Protected Channels at any time or in any manner. Therefore, the transmission of the Protected Channels on the Easybox service infringed DISH's exclusive right to distribute and publicly perform the works that aired on the Protected Channels. Defendants'

infringement irreparably harms DISH by causing DISH to lose subscription revenues and market share and by damaging DISH's business reputation and goodwill. The harm to DISH will continue to accrue unless Defendants' unauthorized transmission of the Protected Channels is permanently enjoined.

7. DISH provides the Protected Channels to its satellite television subscribers in Arabic, Hindi, and Urdu language packages that require the purchase of a domestic package (e.g., Flex Pack, America's Top 120, America's Top 200, or America's Top 250), an International Basic Package, or Chinese Basic Package. The price for the International Basic Package or the Chinese Basic Package is $15 per month per package, while domestic package prices start at $29.99 per month. The minimum cost for a subscriber to DISH's satellite service to receive all the Protected Channels is an additional $44.99 per month for the Arabic language package, $54.99 per month for the Hindi language package, and $34.99 for the Urdu language package, with a 2-year plan. Attached as **Exhibit 1** is a true a correct copy of relevant portions of screenshots from DISH's website on January 24, 2020, concerning these prices for the Arabic, Hindi, Urdu, International Basic, and Chinese Basic packages on DISH's satellite service. DISH also provides the Protected Channels to subscribers of its OTT Sling service, in the Arabic Mosaic Pack, which costs $25 per month, Urdu package, which costs $15 per month, and Hindi Premium package, which costs $40 per month. Accordingly, DISH loses subscription revenue whenever persons receive the Protected Channels using the Easybox service, rather than subscribing to the Protected Channels through DISH.

8. DISH experienced a decrease in subscribers to its Arabic, Hindi, and Urdu language packages on its satellite service during the time that Defendants provided the Protected Channels on the Easybox service, as identified in the Nagra reporting, in terms of cancellations by existing

DISH subscribers and a reduced number of new activations. Attached as **Exhibit 2** is a true and correct copy of a report that DISH generated from its records kept in the ordinary course of business, showing the decrease in DISH satellite service subscribers to the Arabic, Hindi, and Urdu language packages from January 1, 2016 through January 1, 2020. The loss of subscribers is due at least in part to Defendants' unauthorized transmission of the Protected Channels. Quantifying DISH's lost revenue and market share resulting from Defendants' infringing activity is impractical because the number of customers that are receiving the Protected Channels through the Easybox service, and would have otherwise selected or stayed with DISH and for what length of time, cannot be easily determined.

9.  Moreover, DISH does not sub-license the Protected Channels or the works that aired on the Protected Channels to other content providers. Rather, the value to DISH lies in having the exclusive rights to distribute and publicly perform the works aired on the Protected Channels, which in turn enables DISH to attract new subscribers and retain existing subscribers for its own satellite and OTT platforms. Consequently, it is not possible to compute DISH's actual damages caused by Defendants' unauthorized transmission of the Protected Channels based upon a hypothetical license fee model.

10.  Likewise, Defendants' unauthorized transmission of the Protected Channels results in price erosion that further reduces the subscription revenues received by DISH. For example, DISH reduced the price of the "Arabic Super Elite" package by more than 40%, from $44.99 to a promotional price of $24.99 per month. As another example, DISH offered existing customers of its Arabic language packages 50% discounts on subscription fees for 6 months. DISH made these downward price adjustments or discounts to its Arabic packages containing the Protected Channels

to attract new subscribers and retain existing subscribers that might otherwise resort to infringing services such as the Easybox service.

11. As a final point, Defendants' unauthorized transmission of the Protected Channels damages the business reputation and goodwill of DISH. DISH established a reputation as a leading provider, and in some cases the exclusive provider, of international channels in the United States. DISH transmits the Protected Channels in a high-quality format to its subscribers using state-of-the-art satellite and OTT platforms that are dependable, secure, and maintain viewer satisfaction. Defendants' unauthorized transmission of the Protected Channels through the Easybox service takes place beyond the control of DISH and its quality assurance and security protocols, thereby harming DISH as explained below.

12. DISH suffers reputational harm because Defendants' transmission of the Protected Channels is substandard in comparison to the content delivery services provided by DISH. Based upon the analysis performed by Nagra, which extensively monitored the Easybox service, there were interruptions or downtime associated with Defendants' unauthorized transmission of the Protected Channels. Defendants' unauthorized transmission of the Protected Channels in this manner harms DISH in the eyes of consumers that mistakenly believe the transmission originates from or is otherwise approved by DISH, or incorrectly assume that this level of performance is standard among Internet-based platforms that offer the Protected Channels such as DISH's Sling service. Calculating the reputational damage to DISH caused by Defendants' unauthorized transmission of the Protected Channels is inherently difficult, if not impossible.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 27, 2020.

_____
Michael Schwimmer